CHARLES G. GOLDSMITH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20787-83.        Filed June 4, 1986.

*William A. Carey*, for the petitioner.
*Sharon C. Armuelles*, for the respondent.

OPINION

WHITAKER, *Judge*: This case was submitted on November 6, 1985, after full trial during the course of which petitioner objected to the admission of certain exhibits. We postponed ruling on petitioner's objections during trial in

---

order to allow both parties an opportunity fully to present their arguments and until time to review the lengthy exhibits was available. We have determined it is necessary to rule on these outstanding objections prior to making findings of fact. This opinion is limited to ruling on the admissibility of Exhibits DV through KE.[1] Having carefully reviewed and considered each of the disputed exhibits and the lengthy briefs of both parties, the Court is now prepared to rule on petitioner's objections.[2]

In addressing the admissibility of respondent's exhibits, counsel for both parties used the following categories:

A. Reports

1. The November 15, 1979 Report of the Audit Committee submitted to Intercontinental Diversified Corporation's (ICD) Board of Directors ("Audit Committee Report")[3]; and

2. The April 30, 1979 Coopers & Lybrand Report which was prepared for, and submitted to, ICD's Audit Committee (C & L Report).

B.Transcripts of interrogations by an employee of the Securities and Exchange Commission (SEC) during its nonpublic investigation of possible securities law violations resulting from alleged diversion of ICD funds.

C.Depositions taken in the *Pappas* litigation (*Pappas v. Intercontinental Diversified Corp.*, Case No. 77, Civ. 6165 (R.P.)), a derivative shareholders' suit seeking recovery of allegedly diverted ICD funds.[4]

D. Nonparty interview transcripts, reports of interviews and affidavits generated during the SEC and/or ICD Audit Committee investigations.

E. Nonparty correspondence, memoranda, answers to questionnaires, and related miscellaneous documents.

Before addressing these categories of documents, we will dispose of petitioner's "overall objection" and respondent's general arguments for admissibility.

---

[1]As petitioner has raised no objection to Exhibits EB-EH, EJ-EM, EP-ES, EU-FF, FN, FS, GO, HW, IT, JT, and JY, these exhibits will remain in evidence. Exhibits IZ, JA, and JP will be stricken as they are duplicates of other exhibits specifically ruled on herein.

[2]In ruling on petitioner's objections, each exhibit is considered as a whole. The Court is unwilling to admit on a piece-meal basis portions of a document respondent proffered as a whole. See note 14 *infra*.

[3]The audit committee was formed by ICD's board of directors to conduct a comprehensive investigation and report on alleged diversion of ICD funds.

[4]The summons, complaint, and order of final judgement in this litigation is attached to petitioner's Dec. 2, 1985, memorandum in opposition. Petitioner requests the Court to take judicial notice of these documents pursuant to rule 201 of the Federal Rules of Evidence and, as they are relevant to the issues before the Court, we will do so.

## I. *General Arguments*

### A. *Petitioner's "Overall Objection"*

Petitioner raises an "overall objection" to receipt in evidence of 99 of respondent's exhibits because, according to his characterization, "the Government has engaged in a willful and flagrant disregard of not only the Court's Standing Pre-Trial Order but of the Court's repeated directions both preceding and during trial." The standing pre-trial order requires the parties to identify and exchange unstipulated exhibits 20 days before the call of the calendar. This case was called on October 21, 1985. Respondent provided petitioner with a list of proposed exhibits on October 23, 1985. None of the 99 exhibits to which petitioner raises an overall objection were included in that list of proposed exhibits. These exhibits were not identified or provided to petitioner until November 5, the day before the final day of trial.[5] Petitioner argues that "the only appropriate remedy to redress the Government's contumacious behavior [in failing to identify and provide copies of proposed exhibits earlier] is for the Court to sustain petitioner's general objection thereby barring the admission in evidence" of these exhibits.

While the Court does not condone respondent's failure to comply with the standing pre-trial order and orders made during trial, petitioner's trial preparation was similarly nonexemplary. As noted by the Court during the first day of trial, there had been "very little progress in this case in little over half a day, in large measure, because of the failure of Counsel on both sides to follow a very simple, standing pretrial order." It is neither necessary nor productive at this juncture to apportion responsibility for the failure of the parties' counsels to fully prepare, in advance, for trial. It would also be inappropriate to sanction only one party for this shortcoming. Any potential prejudice resulting from respondent's untimely production of exhibits has been eliminated by the reservation of petitioner's right to argue objections to these exhibits after the trial concluded.

---

[5]Even if, as respondent asserts, "the largest majority" of these documents were in petitioner's possession prior to the issuance of the notice of deficiency, this fact does not excuse counsel's failure to advise petitioner of respondent's proposed exhibits.

Consequently, petitioner's overall objection to the admission of 99 exhibits is denied.

Petitioner raised only this "overall objection" to Exhibits EI, EN, FL-FM; FT-FU, FW-GN, GP-GS, IP, JF, JQ-JR, and JW. Therefore, these exhibits will remain in evidence.

## B. *Petitioner's Rule[6] 801(c) Argument*

Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement falling within the definition of hearsay under rule 801(c) is not admissible unless it comes within one of the exceptions to the hearsay rule set forth in rules 803 and 804. See rule 802. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted and the statement is not hearsay." Notes of the Advisory Committee on the Federal Rules of Evidence, 28 U.S.C.A. at 136 (1984) (hereafter advisory committee notes); *United States v. Jackson*, 780 F.2d 1305, 1314 (7th Cir. 1986); *United States v. Anfield*, 539 F.2d 674, 678 (9th Cir. 1976); *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70, 82 (7th Cir. 1950), revd. on other grounds 340 U.S. 558 (1951).

Respondent asserts that "Under Rule 801 * * * all of respondent's exhibits are * * * admissible as authentic documents for the limited purpose of showing that they were in fact made, and as non-hearsay."[7] We find this assertion meritless. With the limited exception of eight exhibits received or written by petitioner discussed *infra*, the fact that the documents "were made" has no independent significance. For example, respondent states that "all exhibits offered by respondent are material and relevant certainly to petitioner's credibility as he attempts to deny his own written admissions in 1976." In order to be "material and relevant" to this issue, the Court would have to consider the content and truth of hearsay statements in the exhibits. Similarly, as to certain interview reports and questionnaires, respondent asserts "their mere existence

---

[6] Unless otherwise indicated, all Rule references are to the Federal Rules of Evidence applicable to this proceeding pursuant to Rule 143(a) of the Tax Court Rules of Practice and Procedure and sec. 7453 of the Internal Revenue Code.

[7] Due to the stipulation of the parties, authenticity of these exhibits is not in issue.

corroborates the methodology and fact-gathering procedures utilized by ICD's Audit Committee in preparing the final Audit Committee report itself." Again, unless the content of these documents is accepted as true, they are generally irrelevant to this issue. There is, moreover, no dispute as to the methodology and fact-gathering procedures utilized in the SEC and audit committee investigations. That these investigations took place is also irrelevant to any issue before the Court unless we look to the truth of the content of the investigations.

Rule 801(c) is not, as respondent appears to believe, a mechanism to circumvent the hearsay rule by the mere incantation of the phrase "not offered into evidence to prove the truth of the matter asserted." Respondent's contention that virtually all of the exhibits in dispute are not being offered for the truth warrants no credence given the extensive use of the contents of these exhibits to support the requested findings of fact in respondent's substantive briefs. The argument that these exhibits are not hearsay is also irreconcilable with respondent's arguments that they are admissible under numerous rule 803 exceptions.

In summarizing the rule 801 argument, respondent states that "all of respondent's exhibits are admissible under Rule 801(c), and such admission is favored in proceedings not tried before a jury, leaving the question of their weight to be argued on brief by the parties." Respondent erroneously appears to believe that the rules of evidence in a jury trial are different than those applied to the instant proceeding. In fact, any proposed exhibit to which a hearsay objection is sustained is excluded from evidence, i.e., is inadmissible, in either forum. Rule 803. The question of weight to be attributed to such a document, therefore, does not arise.

In conclusion, we find unpersuasive respondent's argument that *all* of the exhibits in dispute are nonhearsay under rule 801(c). However, eight exhibits, most of which are letters, received by petitioner (Exhibits EA, FG, FI though FK, FO, and FQ) and a draft of a letter over petitioner's signature (Exhibit FR) are significant, independent of the truth of their content, and, therefore, are nonhearsay. In ruling on petitioner's hearsay objections as

to these exhibits, we have considered the fact that respondent's counsel was under time pressure during the cross-examination of witnesses, due to the Court's interest in, and insistence upon, getting testimony into the record expeditiously. Although the documents received by petitioner were not taken up during his testimony, we feel confident that, absent the time pressure imposed by the Court, petitioner would have identified these documents. We note in this regard that the authenticity of these exhibits is not in issue. As all of these exhibits are dated within the applicable time period, they are clearly relevant to the issues before the Court. In overruling petitioner's hearsay objections, we are cognizant that many of the facts in these exhibits are cumulative of matters already in the record and this factor will be considered in determining the weight to be afforded them.[8]

## C. *Respondent's Rule 803(24) Argument*

Respondent argues that all exhibits to which petitioner raises a hearsay objection are admissible under rule 803(24), one of the residual exceptions to the hearsay rule. Rule 803(24) requires that, to be admitted in evidence, respondent must show that:

1. The statement has "circumstantial guarantees of trustworthiness" equivalent to the enumerated hearsay exceptions of Rules 803 and 804;

2. the statement is offered as evidence of a material fact;

3. the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts;

4. the general purposes of the rules of evidence and the interest of justice will be served by admission of the statement into evidence; and

5. the proponent of the statement has made it known to the adverse party sufficiently in advance of trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it.[9]

---

[8]Respondent asserts that Exhibit EA, a letter from Chesler to petitioner in January 1976, should be admitted "as a fabricated 'business record' prepared by petitioner's nominee, Mr. Chesler, at petitioner's request." Respondent cites no authority for admission over a hearsay objection, of fabricated business records. We wish to make it clear that in overruling petitioner's hearsay objection we by no means intend to indicate that we concur in respondent's characterization of this document.

[9]Respondent clearly cannot make this requisite showing as to numerous exhibits which were not identified or provided to petitioner until November 5, 1985.

See *Herdman v. Smith*, 707 F.2d 839, 841-842 (5th Cir. 1983); *Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 n. 3 (9th Cir. 1980); *United States v. Mathis*, 559 F.2d 294, 298 (5th Cir. 1977).

Rule 803(24) was "designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere" but is to be used very rarely and only in exceptional circumstances "to ensure that this provision does not emasculate our well developed body of law and the notions underlying our evidentiary rules." *United States v. Mathis, supra* at 299. See also *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979); *Estate of Temple v. Commissioner*, 65 T.C. 776, 780-781 (1976). Given the narrow intended application of this exception, respondent's attempt to rely on it for the wholesale admission of broad categories of documents is inappropriate.[10]

Respondent asserts that, as there is no question of authenticity, "guarantees of trustworthiness clearly exist for [the] documents in dispute." Respondent is confusing authenticity with trustworthiness, neither of which is a substitute for the other. The stipulation of the parties that a letter is what it purports to be, i.e., is authentic, in no way guarantees the trustworthiness of statements made in such letter. For example, respondent's stipulation that a copy of a taxpayer's Federal income tax return is "authentic" in no way constitutes a stipulation that the income or deductions stated in the return are trustworthy, i.e., correct. Respondent also places undue emphasis on the relevance of a document in arguing that it is admissible. Not all relevant evidence is admissible. Rules 402 and 403. The relevance of

---

[10]The narrow intended applicability of the exception was expressed by the Senate Judiciary Committee as follows:

"The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule." [S. Rept. 93-1277, U.S. Code Cong. & Adm. News 7065-7066 (1974).]

a proffered exhibit will not overcome a valid hearsay objection.

The requirement that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure though reasonable efforts" requires a consideration of two factors: (1) The availability of other evidence on a particular point; and (2) whether such other evidence can be procured through reasonable efforts. As to the first factor, while the transcript of a deposition may be the most probative evidence of what specifically was said in the deposition, this does not mean that the transcript is the most probative evidence of the facts developed during the deposition. For example, although questions concerning the financial statements of a corporation may have been asked, the financial statements themselves would be the most probative evidence of their content. Also, in many instances, the exhibits which respondent argues are within the rule 803(24) exception are cumulative and, therefore, no more probative, than other evidence already in the record.[11] As to the second factor, it is insufficient merely to state, as respondent does, that the proffered exhibits are the most probative evidence which can be procured "through reasonable efforts." Some indication of what reasonable efforts have been undertaken is essential. Courts have, in fact, construed the term "reasonable efforts" to require deposition of the statement declarant, procurement of alternative documentary evidence, or testimony of knowledgeable persons other than the declarant concerning the material facts. *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 374 n. 24 (5th Cir. 1980); *United States v. Kim*, 595 F.2d 755, 766 (D.C. Cir. 1979); *Zenith Radio Corp. v. Matsushita Electric Industries Co.*, 505 F. Supp. 1190, 1264-1265 (E.D. Pa. 1980), affd. in part and revd. in part sub nom. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir. 1983). Exemplary of this position is the Court's holding in *In re Sterling Navigation Co., Ltd.*, 444 F. Supp. 1043 (S.D.N.Y. 1977) wherein the District Court affirmed a bankruptcy court's refusal to admit prior testimony of the president of a bankrupt

---

[11]In this regard, we note that under rule 403 otherwise relevant and admissible evidence may be excluded if it represents a "needless presentation of cumulative evidence."

Bahamian corporation where other witnesses with knowledge of the subject matter were not deposed.[12] In refusing to admit the transcript, the Court noted that:

No affirmative steps had been taken to depose the Bahamian shareholders * * *. It appears that Council [sic] [the proponent] was content to offer its transcript without making the requisite reasonable efforts to obtain other evidence. In view of this attitude it can hardly be said that the interest of justice would be served by admitting the evidence. [444 F. Supp. at 1047.]

Respondent has failed to show that other equally probative evidence could not be procured through reasonable efforts. We note, for example, that the mere fact that a witness is beyond the subpoena power of the Court does not necessarily preclude the taking of a deposition.

The fallacy of respondent's argument that the disputed exhibits are admissible under the rule 803(24) exception becomes even more apparent when we consider this argument in the context of specific documents. Respondent asserts that the transcript of Rozak's interrogation during the SEC investigation is admissible because its "trustworthiness is established by the undisputed facts * * * [i.e., his] total uninvolvement in the actual return of almost $3 million to the corporate coffers of ICD," and Rozak's "statements are accurately transcribed under oath, and reliable since subject to penalties for perjury, and petitioner could refute such testimony at trial." We disagree, finding Rozak's statements to the SEC interrogator were essentially lacking in "circumstantial guarantees of trustworthiness."

During the years in issue, Rozak was a director and secretary of ICD, a director and secretary/treasurer of Zodiac Shareholdings, Inc. (Zodiac), with signatory authority on Zodiac's account, and the Groves' longtime personal assistant. His overriding allegiance in these potentially conflicting roles was to his own self-interest which coincided with that of the Groves. Respondent asserts Rozak's statements to an SEC employee were trustworthy because Rozak was not involved in the actual return of money to ICD. That is incorrect unless we believe Rozak implicitly, disbelieve more credible evidence and testimony, and ignore

---

[12]This case involved the rule 804(b)(5) residual exception rather than rule 803(24). However, as pertinent, these residual hearsay exceptions are identical.

Rozak's status as the personal assistant of Groves. Also, respondent is silent concerning a more critical issue—i.e., Rozak's knowledge of and involvement in the alleged diversion of ICD funds. The untrustworthiness of Rozak's statements to the SEC are highlighted when compared to his subsequent deposition in the *Pappas* litigation in which he, along with Wallace Groves and petitioner, was a named defendant.[13] The inconsistencies on critical issues is striking. Rozak told the SEC he had personally delivered critical corporate bearer shares to petitioner in early 1973. In his *Pappas* deposition, Rozak did his best to convey the impression that, when he delivered certain corporate documents to petitioner, these critical bearer shares were among the documents delivered. When pressed, however, he conceded he had never seen the bearer shares in petitioner's possession and could not specifically recall giving them to petitioner. Similarly, Rozak told the SEC that, on Grove's and petitioner's instructions, he had taken the necessary steps to change the name of Groves Development Co. to Zodiac after the purported "sale" of this corporation to petitioner. In his *Pappas* deposition, however, he could not recall participating in this corporate name change. However, exhibits received without objection document his involvement. When one compares Rozak's statement to the SEC with his deposition, together with documentary evidence of actions by, or apparently by, Rozak which are inconsistent with his statements, one is left with a clear impression that Rozak was doing his best to support the scenario instigated by Groves in February 1976 to disassociate Groves from Zodiac as of 1973. In the SEC investigation, both Rozak and Groves created the impression that certain documents dated in 1973, but actually executed and delivered in 1976, had not been backdated. Groves' counsel corrected Groves' statements after the SEC interrogation. Rozak did not correct his similarly misleading statements, which were given under oath, although he is bound to have known the true facts. Rozak's statements to the SEC are simply unreliable. His qualification of those statements in his

---

[13]Rozak's *Pappas* deposition was received in evidence due to the parties stipulation during trial. As the Court noted on the record, absent this stipulation, the deposition would not have been received.

*Pappas* deposition only where it was clear that the interrogator was able to demonstrate inaccuracies completely undermines his credibility under oath, whatever the forum.

In concluding our consideration of respondent's rule 803(24) argument, we note that the argument that the majority of exhibits subject to the hearsay objections are admissible "because they are the only available evidence of which they purport to speak," have been obtained by subpoena and were not secured from petitioner, "are all trustworthy in the sense of clearly authentic" and are relevant and material "to the issue of corporate diversion of funds by petitioner", highlights respondent's disregard of the necessary prerequisites to admissibility under the rule 803(24) exception. As these prerequisites have not been met, we cannot find that any exhibit is admissible over petitioner's hearsay objection under this exception.

## II. *Specific Exceptions to the Hearsay Rule*

### A. *Reports*

#### 1. *The Audit Committee Report (Exhibit DW)*

Respondent alternatively argues that the audit committee report is "admissible under Rule 803(6) as a business record, as evidence under 803(7) of absence of entry in business records, as an admission by silence under Rule 801(d)(2)(B), [and] as factual findings under Rule 803(8) resulting from an investigation made pursuant to authority granted by law." Needless to say, petitioner strenuously opposes each of these arguments.

Rule 803(6) provides that a record of a regularly conducted activity is generally admissible if the record was made at or near the time of the event by a person with knowledge and if the record was kept in the regular course of business.[14] The basis for this business record exception is that "accuracy is assured because the maker relies on the

---

[14]Respondent asserts that "At a minimum, any part of the Report which itself is based on unquestionably routine ICD business activities, is itself admissible as a business activity under Rule 803(6)." We note that McCormick on Evidence, sec. 51, at 125 (E. Cleary 3d ed. 1984) which was cited favorably in *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1260 (9th Cir. 1984) states as follows:

"If part of the evidence offered * * * is admissible and a part is not, it is incumbent on the offeror, not the judge, to select the admissible part. If counsel offers both good and bad together and the judge rejects the entire offer, the offeror may not complain on appeal."

systematically kept record in the ordinary course of business activities." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981). See also *Palmer v. Hoffman*, 318 U.S. 109 (1943); *United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982); Advisory Committee Notes, 28 U.S.C.A. at 280. The audit committee report is not admissible under this exception. It was not made at or near the time of the events reported. The investigation underlying the report focused primarily on events which occurred between November 1971 and October 1976. Rather than recording contemporaneous events, the audit committee report, which was completed in November 1979, sought to reconstruct events which had occurred 2 to 8 years earlier. While we are convinced the drafters of the report strived for accuracy, they did not have first-hand knowledge of many of the facts in the report and frequently had to rely on second-hand or hearsay sources of information. Finally, the audit committee report was not kept in the regular course of ICD's business and it was not in ICD's ordinary course of business to prepare or maintain such reports. See *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984); *United States v. Kim*, 595 F.2d 755, 760-763 (D.C. Cir. 1979); *United States v. Plum*, 558 F.2d 568, 572-574 (10th Cir. 1977); *White Industries, Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1059 (W.D. Mo. 1985). As respondent correctly states "The sole purpose of the entire costly time-consuming and detailed audit was to investigate issues the Securities and Exchange Commission *alone* wanted investigated. There was simply no other reason for the sheer existence of the ICD Audit Committee." (Emphasis in original.)

Alternatively, respondent argues that the audit committee report is admissible under the rule 803(8) exception for public records and reports. To come within this exception, the audit committee report would have to be a report of a public office or agency setting forth "factual findings resulting from an investigation made pursuant to authority granted by law." The audit committee report fails to meet the threshold prerequisite—it was not prepared by a public

---

We do not view it as our responsibility or function to sift through the audit committee report to identify parts which may be admissible under rule 803(6).

office or agency. Respondent's arguments that the audit committee was the "alter ego" of the SEC and that the SEC's "total control over the purpose, scope, and content" of the report makes it a public report are factitious. The members of the audit committee were not public officials nor were they, as a group, a public agency or office. See, *Lamphere v. Brown University*, 685 F.2d 743 (1st Cir. 1982).

In considering respondent's arguments that the audit committee report qualifies as an exception to the hearsay rule under rules 803(6) and/or 803(8), we found *Osterneck v. E.T. Barwick Industries, Inc.*, 106 F.R.D. 327 (N.D. Ga. 1984), instructive. In that case, the court, on facts parallel to the instant case, ruled that reports of a special review committee were not admissible under either of these exceptions. The defendant in *Osterneck* sought an order in limine to prevent plaintiffs from using a report and supplement report of a special review committee of plaintiff corporation prepared as a condition to a "Consent and Undertaking" between the corporation and the SEC. Price Waterhouse & Co. was engaged as accountants to assist in the investigation. The court found the report was "based primarily on evidence obtained by the SEC in its prior investigation," documents obtained from various other sources and interviews with witnesses. Also, three depositions taken in that case were used in preparation of the report. As in the instant case, some company documents were unavailable and some people refused to talk to the committee. The report in *Osterneck* was submitted to the corporate board of directors and copies were sent to all shareholders. As the court noted, "the Special Review Committee gathered a lot of information, much of which was based on unauthenticated documents or uncorroborated testimony which was simply incorporated into the Report." In considering the admissibility of the report under rules 803(6) and 803(8), the court focused on the explicit requirement of trustworthiness of each of these exceptions. Finding doubt as to trustworthiness, the court ruled the report inadmissible. A comparable result is appropriate in the instant case as we find the trustworthiness of the audit committee report to be subject to challenge because of the hearsay, and in some instances

to challenge because of the hearsay, and in some instances incomplete, sources of information the audit committee relied on.

Respondent further asserts that, if the audit committee report is not admissible under section 803(6), it "logically [would] be admissible under Rule 803(7) as uncontradicted evidence of what was missing in ICD's normal financial business activities" between 1972 through February 19, 1976. Rule 803(7) provides for the admission of business-like records to show the absence of an entry in such records of a matter "if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness." See Advisory Committee Notes, 28 U.S.C.A. at 282. We have already found the audit committee report is not a business record. This fact would also preclude its admission under the rule 803(7) exception. Additionally, the absence of entry of a fact in records has significance only if an entry would regularly be made in such records. In the instant case, since the allegedly "missing entries" are not specified, we cannot find they would regularly be in ICD's business records. Reliable evidence, in fact, indicates that certain transactions were arranged so as to avoid entry of such facts in ICD's records and absence of reference to these transactions would, therefore, be expected. An alternative explanation for the lack of entry in ICD's records of unidentified facts which respondent asserts should be there, is that, since gaps in the business records are conceded, the "missing facts" may have been entered in the "missing records." Even were we to hold the audit committee report was a business record, it is impossible to draw any conclusion concerning what the incomplete records on which it was, in part, based did not contain.

As a final basis for admission, respondent argues that the audit committee report is admissible under rule 801(d)(2) in that, by his silence, petitioner has "admitted the contents of the Audit Committee report." Rule 801(d)(2)(B) provides that "a statement of which [a party-opponent] has manifested his adoption or belief in its truth" is not hearsay. A party may "manifest his adoption or belief" by silence.

However, "Silence in the absence of a duty to speak, is not an admission." *Jackson v. United States*, 250 F.2d 897, 900 (5th Cir. 1958). Moreover, it has long been settled that "Silence is not evidence of an admission, unless there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not." *Wiedemann v. Walpole*, 2 Q.B. 534, 538 (1891). See also *Southern Stone Co. v. Singer*, 665 F.2d 698 (5th Cir. 1982).

In elaborating on the rule 801(d) argument, respondent asserts that:

> If he had done nothing wrong [petitioner] would not have been "silent." Thus, his mere silence itself buttresses the admission of the Audit Committee Report as an admission by silence where the only conclusion to be drawn from such silence is petitioner's ownership of Zodiac Shareholdings, Inc. personally, and *never* as a purported agent of ICD.

We do not agree. Petitioner did not in any way manifest his adoption or belief in any statement in the audit committee report.

On advice of counsel, petitioner refused to be interviewed or discuss relevant matters with personnel of ICD during the audit committee investigation. However, in correspondence with the chairman of the audit committee, petitioner's attorney advised the committee that the "parameters and focus" of the investigation reflected "unwarranted prejudicial assumptions" and that the committee was "crediting information which does not deserve to be credited and would not stand up if subject to critical analysis or cross examination." Petitioner's strenuous objections, via his counsel, cannot be construed as silence or adoption of a report which was completed well after these objections were raised. In fact, the audit committee report explicitly recognizes that it has been petitioner's consistent position "as expressed through his attorney, * * * that he had been acting as agent for another person or persons when he acquired Zodiac and * * * then caused Group funds to be diverted."

The record does not indicate that after the audit committee report was published petitioner formally renewed his objections to any statements contained therein. However, under the circumstances of this case we would not expect

him to do so and his post-report silence does not constitute an adoption of the audit committee report. When the diversion of funds from ICD's accounts first came to light, St. George, the primary actor for ICD at that juncture, jumped to the conclusion that petitioner had diverted funds for his own use, confronted petitioner with his conclusion, but refused to permit petitioner to challenge the conclusion or offer any explanation. We note that Groves and Rozak contributed to St. George's hasty conclusion by declining to be forthright with him concerning the diverted funds. St. George's conclusion was not immediately subjected to scrutiny. Rather, everyone accepted St. George's conclusion concerning petitioner's culpability and this prejudgment tainted the conduct and results of both the SEC and audit committee investigations. The first and only occasion on which petitioner offered an explanation of the ICD fund diversions was under oath before this Court. Given St. George's refusal to allow him an opportunity to explain and the predisposition of the authors of the audit committee report, we would not expect petitioner to respond to it. Therefore, his failure to do so cannot be construed as a manifestation of an "adoption or belief in its truth." On the facts of this case, we give little merit to respondent's argument under rule 801(d)(2)(B).

Having disposed of each of respondent's arguments, we find that the audit committee report is hearsay, does not come within any exception, and should be stricken from the record.

### 2. C & L Report (Exhibit DV)

Respondent asserts that the C & L report is admissible under the rule 803(6) exception. As noted above, rule 803(6) provides that a record of a regularly conducted business activity is generally admissible if the record was made at or near the time of the event by a person with knowledge and if the record was kept in the regular course of business.

Respondent erroneously seeks to characterize the Coopers and Lybrand Report (C & L report) as an "annual audit of ICD." This characterization is clearly wrong. The report itself states that it does not "constitute an examination of

financial statements in accord with generally accepted auditing standards." Respondent further asserts that the C & L report is "indisputably a business record" because it was prepared by consulting original records of ICD, was authorized by Minahan (legal counsel to ICD and chairman of the audit committee) and St. George, and has "no other purpose except to examine the financial expenditures of ICD during a stated period." We disagree and find the prerequisites for the applicability of the rule 803(6) exception to be lacking. For example, the C & L report was not made "at or near the time" of the matters recorded but 4 to 8 years thereafter. It was. not prepared by or based on information of persons with personal knowledge of the matters recorded. Rather, in preparing the report, C & L personnel "consulted" incomplete ICD financial records, questionnaires obtained in conjunction with the audit committee investigation, summaries of interrogations by an employee of the SEC, and unspecified sources investigated by the audit committee. Much of this source material is clearly inadmissible hearsay evidence.[15] Finally, it was not a regular practice of ICD to make documents of this nature. The C & L report is itself hearsay and, in large part, hearsay on hearsay. It does not come within the rule 803(6) exception and must be stricken from the record.

B. *Transcripts of Interrogations by an Employer of the SEC (Exhibits JZ through KD)*

As part of the SEC investigation, a number of interviews were conducted by an SEC employee. These interviews were transcribed, and the "witness" was under oath and represented by counsel. Neither petitioner nor petitioner's counsel had the right to attend these interviews or to cross-examine the witnesses. Securities and Exchange

---

[15]Almost as an aside, respondent argues that "In a technical sense, each document consulted or reviewed by Coopers and Lybrand, having been prepared under the direct authority of petitioner, were admissions and non-hearsay under Rule 801(d)(2)." Therefore, respondent asserts, the C & L report was "based substantially on admissible evidence" i.e., admissions of petitioner, and this fact serves as an independent basis for admissibility. As noted, the report was not based substantially on admissible evidence. Even if this were the case, the Federal Rules of Evidence do not provide an exception for documents derived "substantially" from admissible evidence. Needless to say, respondent cited no authority for this position.

Commission Rules of Practice, 17 C.F.R. sec. 203.7(a) (1964) (as amended in 1977).

Respondent asserts that transcripts of the interrogations of St. George, Groves, Coleborn, and Rozak constitute business records of ICD, as such testimony was "given in the course of complying with the Commission's reporting requirements for full disclosure, which was a regular activity of ICD since at least December 28, 1973." This attempt to construe these statements as ICD business records simply ignores the requirements of the rule 803(6) exception. The transcripts were not made at or near the time of the relevant events; interrogations by an employee of the SEC was not a regular practice or regularly conducted business activity of ICD, and the fact that the individuals were encouraged to speculate and guess undermines any trustworthiness these statements might otherwise have. Consequently, we find no merit in respondent's position that these transcripts constitute business records.

As to the transcript of St. George's statements (Exhibit KD), respondent also asserts that it is admissible pursuant to rule 801(d)(1) "to the extent its [sic] conflicts substantially with his testimony in this trial." Respondent does not, however, indicate the extent or areas of purported conflict, stating merely "that conflicts will be dealt with in respondent's full brief."[16] Petitioner objects to the admissibility of the transcript of St. George's SEC interrogation because respondent failed to direct St. George's attention to purported inconsistencies. While we agree that the inconsistencies should have been more fully explored during trial, we are also cognizant that the Court imposed considerable time constraints on respondent's counsel during her examination of St. George. We have determined, therefore, that the SEC transcript of St. George's interrogation should remain in evidence. As to inconsistencies, the Court will give due consideration to this fact in determining the weight to be afforded St. George's trial testimony as well as the SEC transcript.

---

[16]We note that St. George gave entirely credible explanations of certain discrepancies between his testimony during trial and statements to the SEC and, to a large extent, St. George's statements to the SEC are corroborated by other evidence in this proceeding.

## C. *Depositions taken in the Pappas Litigation (Exhibits JD and JE)*

Respondent asserts that two depositions of D.C. de la Rue[17] taken in connection with the *Pappas* litigation are admissible under rule 804(b). In pertinent part rule 804(b)(1) provides that former testimony given in a deposition taken in "compliance with law in the course of the same or another proceeding," is not excluded by the hearsay rule "if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by * * * cross * * * examination" and the declarant is unavailable as a witness.

Respondent asserts that D.C. de la Rue was "unavailable" because he was beyond the subpoena jurisdiction of this Court. Petitioner counters that rule 804 does not equate unavailability with inability to obtain judicial process over the declarant. In pertinent part, rule 804(a)(5) defines unavailability as a situation in which the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance * * * by process or other reasonable means."[18]

In ruling on the admissibility of former testimony before the Japanese Fair Trade Commission, the Court, in *Zenith Radio Corp. v. Matsushita Electric Industries Co.*, 505 F. Supp. 1190, 1249 (E.D. Pa. 1980), revd. on other grounds sub nom. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir. 1983), stated:

In civil cases, it has long been the rule that inability to procure attendance by "process or other reasonable means" is satisfied by demonstration of inability to serve a subpoena. * * * We have found nothing to indicate that the adoption of the Federal Rules of Evidence altered this long-standing rule.

* * * Nor do we find in Rule 804(a)(5) any requirement that petitioners seek the voluntary attendance of witnesses residing abroad whose attendance cannot be compelled by process.[19]

[Treatise and case citations omitted.]

---

[17]During the time period relevant to the instant case, D.C. de la Rue was a director and the chief financial officer of ICD.

[18]The rule 804(b)(2) through (b)(4) exceptions, which are not relevant in the instant case, require a greater showing of unavailability—i.e., the proponent of the statement must show that he is unable to procure the declarant's "attendance or testimony," e.g., via a deposition. Rule 804(a)(5). See also rule 803(24).

[19]The Court concluded that "the declarants of former testimony are unavailable under Rule 804(a)(5) if they are outside the subpoena power of the court, even if the proponent of the

We find that D.C. de la Rue was unavailable within the meaning of rule 804(a)(5) and his deposition testimony is not inadmissible under rule 804(b)(1) for this reason. Petitioner does not argue that he did not have an opportunity and similar motive to develop the testimony of D.C. de la Rue during the *Pappas* depositions. Therefore, the specific requirements for the rule 804(b)(1) exception to the hearsay rule have been met and the deposition transcripts will remain in evidence.

D. *Nonparty Interviews, Reports of Interviews, and Affidavits*

This group of exhibits consist of: transcripts or reports of interviews conducted by Minahan (Exhibits DX, EO, GT, GX, HA, and JG); affidavits (Exhibit IQ-IS, IY, and KE); and miscellaneous interview memoranda and correspondence (Exhibits GZ, HP, HS, and JJ-JK). Respondent asserts that the majority of these exhibits are admissible as business records under rule 803(6) as each "was prepared solely in connection with effectuating honest reporting of ICD's financial condition" to the SEC, "which reporting was a regularly conducted business 'activity' of ICD." However, respondent has failed to demonstrate that any of these documents were a record of regularly conducted business activity of ICD or were prepared at or near the time of the reported event. Respondent has also failed to demonstrate any requisite "guarantee of trustworthiness" which is an explicit prerequisite for admission of these exhibits under rule 803(6).

Petitioner's valid hearsay objections have not been sufficiently addressed, or effectively refuted, by respondent. Therefore, we find that the exhibits included in this category should be stricken from the record.

---

former testimony has made no effort to take their depositions or to request their voluntary attendance at trial." *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F. Supp. 1190, 1251 (E.D. Pa. 1980), revd. on other grounds sub nom. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir. 1983).

## E. *Nonparty Correspondence, Memoranda, Answers to Questionnaires, and Related Miscellaneous Documents*

With few exceptions, respondent has failed to specifically address, by document, hearsay, or relevancy objections raised as to the admissibility of this category of exhibits. We note that many of these documents were prepared solely in connection with the audit committee investigation which occurred years after the events relevant to the case before us. Therefore, the contemporaneous-in-time prerequisite of rule 803(6) has clearly not been met as to these exhibits.

Within this category of exhibits is a group of responses to a questionnaire prepared by Minahan in conjunction with the audit committee investigation (Exhibit DY, HC-HL, and JX). With the exception of Minahan, none of the individuals whose responses to the questionnaire were received were called as a witness. Minahan's response to his own questionnaire was not a subject of his testimony. These exhibits are clearly hearsay and do not fall within the business records exception.[20] Petitioner has also objected to receipt of Exhibit IU, a blank copy of the questionnaire, and attached cover letter, as irrelevant. We sustain this objection and both the blank and completed questionnaires will be stricken.

Also included in this catchall category of exhibits are annual reports of ICD for 1976, 1977, and 1978 (Exhibits HM, HN, and HR) and an October 31, 1979, ICD Form 10-K (Exhibit IO).[21] We agree with respondent that these documents are business records of ICD. As to the 1978 annual report and the 1979 Form 10K, however, we agree with petitioner that, as they are considerably removed in time from the disputed events, they are irrelevant to the issues before the Court. These two exhibits will be stricken.

The admissibility of extensive correspondence and memoranda relating to the SEC and audit committee investigations are also in dispute. (Exhibits DZ, ET, FH, GU-GW,

---

[20]Petitioner has also raised an objection on the basis of relevance to Exhibits HC through HE. Having sustained petitioner's hearsay objections, we need not address these relevance objections.

[21]Other documents filed with the SEC or drafts of such documents which had been marked as exhibits were withdrawn by respondent's counsel during trial (Exhibits IF through IJ). As Exhibit JC is a duplicate of Exhibit II and JL is a draft of one such document, it appears respondent inadvertently failed to withdraw these exhibits. They will, therefore, be stricken.

GY, HB, HO, HQ, HU-HV, HX-IA, IK-IN, IV-IX, JB, JH, JM-JN, JU-JV). As pointed out, these investigations concerned events which had occurred years earlier. The relevant facts concerning those events could have been, and in most instances were, proved independently. We have held that the two reports generated during the audit committee investigation are inadmissible hearsay. No independent ground for admissability of the documents underlying these reports has been suggested by respondent and we know of none. Petitioner's hearsay objections as to these exhibits are sustained and these exhibits will be stricken.[22]

A number of exhibits in this category constitute legal opinions of ICD counsel (Exhibits FV and IB-IE) and Bahamian special counsel (Exhibit HT). Respondent asserts that Exhibit ID, a 1973 memorandum entitled "Requirements of Securities Laws," is admissible because it is based on U.S. security law which is subject to judicial notice. By analogy, respondent could argue that the other legal opinions should also be admitted as the laws discussed in these memoranda are subject to judicial notice. Respondent has not, however, requested the Court to take judicial notice of any of these laws. Having reviewed the legal opinion memoranda, they clearly contain hearsay statements and, generally, are irrelevant to the instant proceeding. Therefore, we sustain petitioner's objections to these exhibits. Similarly, a 1976 memorandum by ICD's general counsel concerning the company's "conflicts of interest policy" (Exhibit JO), which petitioner objects to on both hearsay and relevance grounds, will be stricken as irrelevant.

Exhibit JI, an April 5, 1977, letter from St. George to a law firm regarding the firm's representation of ICD's corporate counsel in a Federal Trade Commission investigation, is also in dispute. We agree with petitioner that this document is both hearsay and, more pointedly, irrelevant. Petitioner also objects on the basis of relevance to Exhibit FP, a January 1977 letter from petitioner's counsel stating petitioner would not meet with ICD's accounting firm. We

---

[22]Petitioner also raised relevance objections to Exhibits HY, JH, IK, and GV. Given that we have sustained petitioner's hearsay objections, we need not rule on this additional basis for excluding these exhibits.

agree that, given petitioner's testimony at trial, this document is irrelevant.

Exhibit JS, the final judgment in the SEC versus ICD controversy, is also in dispute. Petitioner objects to the admissibility of this exhibit on the basis of relevance. We disagree. Therefore, this exhibit will remain in evidence.

Based on the foregoing,

*An appropriate order will be issued.*