T.C. Summary Opinion 2015-67

UNITED STATES TAX COURT

TROY S. PODRAZA AND JILL A. PODRAZA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9461-13S.                    Filed November 19, 2015.

Troy S. Podraza and Jill A. Podraza, pro se.

<u>Lisa Kathryn Hunter</u>, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed. Pursuant

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code), as amended and in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $6,253 in petitioners' Federal income tax for 2009. The issue before the Court is whether petitioners are eligible for a New Qualified Plug-in Electric Drive Motor Vehicle tax credit (PEVC) of $6,253 pursuant to section 30D for 2009. The notice of deficiency did not determine a penalty.

## Background

Some of the facts are stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Troy S. Podraza and Jill A. Podraza timely filed a joint Federal income tax return for 2009. Petitioners resided in Nebraska when their petition was filed.

The electric vehicle at issue, a Spark NEV-48 EX, was manufactured by Zone Electric Car, LLC (Zone Electric). Pursuant to Notice 2009-54, 2009-26 I.R.B. 1124 (June 29, 2009), Zone Electric submitted a request on October 1, 2009, to the Internal Revenue Service (IRS) to certify that its electric vehicles were qualified plug-in electric vehicles for purposes of section 30D, which as of the date of the notice allowed a tax credit for qualified plug-in electric vehicles

placed in service from January 1 to December 31, 2009. On October 7, 2009, the IRS issued a letter to Zone Electric stating that the Spark NEV-48 EX model "meets the requirements of the Qualified Plug-in Electric Vehicle Credit as a Qualified Plug-in Vehicle. This acknowledgment is valid only through December 31, 2009, at which time the vehicle will need to be re-submitted under the revised provisions of IRC 30D and any subsequent Notice covering that period." The letter goes on to state that "purchasers of this Qualified Plug-in Electric Vehicle may rely on the certification concerning the vehicle's qualification for the Qualified Plug-in Vehicle Credit."

The electric vehicle was delivered to petitioners on June 8, 2010, even though petitioners placed an order for a low-speed electric vehicle reflecting their choice of color, radio, and size from Drive Electric, LLC (Drive Electric), through its Web site FreeElectricCar.com on December 21, 2009.[2]

On December 21, 2009, petitioners remitted full payment of $7,786.53 for the vehicle with a credit card and promptly commenced insurance on the vehicle on December 28, 2009.

---

[2]After confirmation of a purchase agreement with a buyer, Drive Electric sends the order to Zone Electric. Zone Electric manufactures low-speed electric vehicles whereas Drive Electric is listed as the dealer.

Petitioners were provided with a bill of sale and a copy of the certificate of origin. The bill of sale conveyed an electric vehicle to petitioners and included a description of the vehicle and a vehicle identification number (VIN). The bill of sale purported to transfer "title to the specific vehicle as evidenced by the accompanying Manufacturer's Statement of Origin." The certificate of origin stated that the purchased electric vehicle would be transferred from the manufacturer to the dealer on the date listed and under the invoice number indicated by the dealer. Drive Electric was listed as the dealer, and the certificate of origin was signed by the manufacturer, Zone Electric, with a transfer date of December 21, 2009. The certificate of origin indicated that the manufacturer transferred the new electric vehicle to the dealer on the transfer date, leading petitioners to believe that the electric vehicle was located at the dealer's location in Tulsa, Oklahoma, on December 21, 2009. After receiving the documents petitioners attempted to license the electric vehicle at the Department of Motor Vehicles in Nebraska. However, slow-moving vehicles were not required to be licensed under Nebraska law.

Before placing their order petitioners did considerable research on the tax consequences of purchasing an electric vehicle with Drive Electric. Petitioners discussed the potential transaction with a representative from Drive Electric,

examined samples of title documents, and reviewed the model certification letter issued to Zone Electric by the IRS. In addition, petitioners consulted with their tax professional in regard to the requirements of a PEVC. Relying on representations made by Drive Electric and their tax professional's advice, petitioners negotiated a purchase of the electric vehicle. At the time of the purchase petitioners were under the impression that all of the vehicles were currently in existence and manufactured in China.

At trial petitioners did not recall any representation of terms and conditions relating to the purchase or delivery of the electric vehicle. Consequently, petitioners do not believe they accepted any such terms and conditions beyond the agreement to purchase. Although purchased on December 21, 2009, the electric vehicle was not delivered to petitioners until June 8, 2010.

When petitioners filed their Federal income tax return for 2009, they claimed a PEVC tax credit of $6,253.[3] Their return was prepared and signed by an accountant. On January 29, 2013, respondent issued a notice of deficiency to petitioners determining an income tax deficiency of $6,253. Respondent issued

---

[3]The IRS provided a certification letter to Drive Electric which stated that the Spark NEV-48 EX was eligible for a PEVC of $6,496.53. The record does not explain how petitioners calculated the reduced amount of the credit claimed of $6,253.

the notice of deficiency on the ground that petitioners were not eligible for the tax credit because the qualified motor vehicle was not placed in service during the taxable year at issue.

A trial was held on June 3, 2014, at which the parties filed a supplemental stipulation of facts attaching Exhibit 8-R and describing it therein. Exhibit 8-R is a "Declaration For Records of Regularly Conducted Business Activity of Steven R. Ball", who is the "Managing Member and Custodian of Records for Zone Electric", executed on May 21, 2014. Petitioners reserved an objection to the declaration based on lack of foundation, relevance, and other grounds. The Court reserved ruling on the objection and ordered the parties to brief its applicability.

## Discussion

### I. Evidentiary Issue

Generally, to resolve evidentiary objections, the Court applies the Federal Rules of Evidence applicable in nonjury trials in the U.S. District Court for the District of Columbia. Sec. 7453; Rule 143(a); see Clough v. Commissioner, 119 T.C. 183, 188 (2002). Rule 174(b) and sections 7453 and 7463(a), however, carve out an exception for trials of small tax cases. Under this exception, the Court conducts small tax cases as informally as possible consistent with orderly

procedure and "any evidence deemed by the Court to have probative value shall be admissible." Rule 174(b); Schwartz v. Commissioner, 128 T.C. 6, 7 (2007).

Respondent asserts that the terms and conditions in Exhibit 8-R are the same terms and conditions petitioners agreed to when they purchased their electric vehicle on December 21, 2009. The terms and conditions are dated May 15, 2014, and certified by written affidavit by the custodian of records for Zone Electric. It is unclear whether the terms and conditions dated May 15, 2014, are the same as those putatively accepted by petitioners during purchase on December 21, 2009, or if the date is merely an electronic time stamp. Because of the length of time between the purchasing event and the recorded date within the terms and conditions in Exhibit 8-R, the Court concludes that this Exhibit raises more questions than it provides answers. Therefore, petitioners' objection is sustained on the basis that the document is not probative and Exhibit 8-R is not admitted as evidence.[4]

---

[4]If this was a trial of a regular tax case, the Court would not conclude that the business record was reliably "made at or near the time" of the transaction. Exhibit 8-R would not come within Fed. R. Evid. 803(6) and would not be entered into evidence. Fed. R. Evid. 801(c) defines "hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay is generally excluded from evidence unless an exception applies. See Fed. R. Evid. 802; Snyder v. Commissioner, 93 T.C. 529, 532 (1989).

(continued...)

II.    Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed to be correct and the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to determining the tax liability of the taxpayer.  This section becomes applicable only if the taxpayer produces credible evidence at trial.  See Higbee v. Commissioner, 116 T.C. 438, 444 (2001).  Petitioners have not argued that section 7491(a) applies and have not shown that they meet the requirements to shift the burden of proof; therefore, the burden of proof remains with petitioners.

III.    Section 30D

The PEVC was originally enacted in the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, div. B, sec. 205, 122 Stat. 3765, 3835 (Oct. 3,

[4](...continued)

A business record may be introduced into evidence under the business records exception to the hearsay rule.  See Fed. R. Evid. 803(6).  In accordance with Fed. R. Evid. 803(6), a record of a regularly conducted business activity is generally admissible if the record was made at or near the time of the event by a person with knowledge and if the record was kept in the regular course of business.  See Goldsmith v. Commissioner, 86 T.C. 1134, 1145 (1986) (holding that a report made two to eight years after the event was inadmissible in part because it was not made "at or near the time" of the event).

2008), and effective for tax years beginning after December 31, 2008. Under section 30D(a)(1), a taxpayer is allowed a one-time credit against income tax with respect to each new qualified plug-in electric drive motor vehicle placed in service during the taxable year.

Section 30D(a)(1) as signed into law on October 3, 2008, was amended on February 17, 2009. The American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, sec. 1141(a)-(c), 123 Stat. 115, 326-328, amended section 30D(d)(1) to define a "new qualified plug-in electric drive motor vehicle" more narrowly for tax years after December 31, 2009, to exclude low-speed vehicles, such as those primarily for use on golf courses, as they would no longer constitute qualified motor vehicles for purposes of the PEVC. Notice 2009-89, 2009-48 I.R.B. 714 (Nov. 30, 2009).

After December 31, 2009, the definition of qualified motor vehicles would effectively exclude low-speed vehicles from eligibility for a PEVC. As a result, a taxpayer who intended to claim a PEVC for a low-speed electric vehicle must have been in compliance with the provisions of section 30D on or before December 31, 2009.

Petitioners claimed a tax credit of $6,253 on their 2009 tax return for the purchase of a new low-speed electric vehicle. On December 21, 2009, petitioners

paid Drive Electric in full for a low-speed electric vehicle. Drive Electric then issued the certificate of origin and the title document with a unique VIN. Ultimately, a vehicle with the matching VIN was delivered on June 8, 2010. There is no dispute that Drive Electric's model Spark NEV-48 EX is a low-speed electric vehicle and, for purposes of section 30D, would not qualify under the more narrow definition to be applied after December 31, 2009.

Section 30D(a)(1) as effective on the date of petitioners' purchases provides that low-speed vehicles can qualify for the PEVC when the vehicle is: (1) placed in service by the taxpayer in a taxable year beginning after December 31, 2008 (the enactment of the statute); (2) acquired by the taxpayer on or before December 31, 2009 (before the amendment of the statute took effect); and (3) generally in compliance with the requirements of section 30D. Notice 2009-89, supra.

Respondent argues that petitioners are not eligible for a PEVC for 2009 because the qualified motor vehicle was not placed in service on or before December 31, 2009, and the $6,253 credit that petitioners claimed was no longer in effect since respondent asserts that the vehicle was placed in service when the vehicle was delivered on June 8, 2010. Consequently, respondent argues petitioners are not eligible for a PEVC for 2009.

Petitioners argue they remitted payment and acquired title to a qualified electric vehicle on December 21, 2009. Petitioners assert that legal title passed to them on the date of purchase and therefore they are entitled to a PEVC for 2009 because the vehicle was acquired before December 31, 2009. However, the statute effective on the date of purchase also required a qualified motor vehicle to be placed in service on or before December 31, 2009. Thus, the statutory requirements are twofold: (1) petitioners had to acquire title to the vehicle after December 31, 2008, and (2) place it in service on or before December 31, 2009. Petitioners are entitled to a PEVC for 2009 if they met these requirements.

Section 30D(a)(1) allows a credit against tax for qualified property for the taxable year in which such property is placed in service. "Neither the [C]ode nor the regulations provide a general definition for a term that each uses many times regarding property: 'placed in service'". Jasper L. Cummings, "When Is Property Placed in Service?", 149 Tax Notes 409 (2015). "The de facto general definition is the earlier of readiness for use for its intended purpose or actual regular use for that intended purpose. But piecing together the de facto definition is far harder than it ought to be". Id.; e.g., Rev. Proc. 2007-65, 2007-2 C.B. 967 ("placed in service" not defined for section 45, but the depreciation and investment credit

definition is adopted without question); see IRS Publication 946, How to Depreciate Property 7 (Feb. 27, 2015).

Although "placed in service" is not explicitly defined for purposes of section 30D, other sections of the Code provide guidance. Section 38(a) provides a business credit against tax with respect to property in the first taxable year in which qualified property is placed in service by the taxpayer. See also sec. 1.46-3(d)(4)(i), Income Tax Regs. Property will be considered placed in service when it is in a condition or state of readiness and availability for a specifically assigned function. Id. subpara. (1)(ii); see also Consumers Power Co. v. Commissioner, 89 T.C. 710 (1987) (referring to investment credit for purposes of section 38(a)).

There are other tests in the regulations which have been used to determine when a vehicle has been placed in service. Section 1.150-2(c), Income Tax Regs., for purposes of tax-exempt bonds defines placed in service as "the date on which, based on all the facts and circumstances--(1) The facility has reached a degree of completion which would permit its operation at substantially its design level; and (2) The facility is, in fact, in operation at such level." Section 1.1250-4(b)(2), Income Tax Regs., provides that property is placed in service on the date of first use, regardless of when depreciation starts. Finally, section 145.4051-1(c)(2),

Excise Tax Regs., states that the placed-in-service date for the tax on heavy trucks and trailers is the date when the owner takes possession of the vehicle.

The Court will look at whether the vehicle was "in a condition or state of readiness and availability" for the "specifically assigned function" for which petitioners purchased it to determine when petitioners placed the Spark NEV-48 EX in service. See sec. 1.46-3(d)(1)(ii), Income Tax Regs.

This Court has held that the asset is considered to be "placed in service" only when the asset is in a state of readiness and available for full service. Noell v. Commissioner, 66 T.C. 718, 728-729 (1976). In Noell, the taxpayer built an airport runway which was fully completed in late 1968. Id. at 721. Construction of the runway required the taxpayer to grade the land, supply a rock base, lay down asphalt payment, and plant sod. Id. Before the surface was completed, pilots occasionally used the runway to land and take off in 1967 despite the risk of damage to the plane from using an unpaved runway. Id. The incomplete and rough surface made the runway unsatisfactory for permanent use and available only in good weather. Id. The taxpayer contended that the runway construction was not complete until 1968, and so the investment credit for the runway should be taken for his 1968 taxable year. Id. at 728-729. The Commissioner objected on the grounds that because pilots began to use the runway in 1967, the runway was

placed in service that year. Id. Despite even occasional use, the Court concluded that the runway was not placed in service until it was in a state of readiness for full service of its specifically assigned function in 1968. Id. at 729.

Caselaw requires that the Court determine more specifically whether the asset in question was ready and available for full operation on a regular basis for its specifically assigned function. See Consumers Power Co. v. Commissioner, 89 T.C. 710; Brown v. Commissioner, T.C. Memo. 2013-275. The Court determined the placed-in-service date for a hydroelectric utility plant was deferred until the plant was available for full operation on a regular basis. Consumers Power Co. v. Commissioner, 89 T.C. 710. The Court determined a depreciation deduction for the hydroelectric plant was not allowed for the year it first generated electric power during preoperational testing because the plant was not available for full operation on a regular basis until the following year. Id. at 724. The Court noted that responsibility and control of the plant remained with the contractor during the preoperational testing and the taxpayer did not formally accept the plant until the following year. Id. Ultimately, the placed-in-service date of property is when it is in a state of readiness and availability for full service of its specifically assigned function. Id.

The issue in this case closely resembles the issue in <u>Brown</u>. In response to growing concern for the economy, Congress enacted section 168(k), which granted a "special allowance" for qualified property acquired after September 10, 2001, and before January 1, 2005. <u>See</u> Job Creation and Worker Assistance Act of 2002, Pub. L. No. 107-147, sec. 101, 116 Stat. at 22. Section 167(a) offered a depreciation deduction for qualified property "for the taxable year in which such property is placed in service" which included an allowance equal to 30% of the adjusted basis of the qualified property in addition to depreciation otherwise allowable. Sec. 168(k)(1)(A). This additional allowance, also known as bonus depreciation, was temporarily increased from 30% to 50% for qualified property placed in service after May 5, 2003, and before January 1, 2005. <u>See</u> sec. 168(k)(4)(B). Similarly, a PEVC was applicable to low-speed electric vehicles during a limited time. In order to qualify for a PEVC, the taxpayer must comply with the provisions set forth by section 30D before its expiration.

The taxpayer in <u>Brown v. Commissioner</u>, T.C. Memo. 2013-275, sought to take advantage of the increased bonus depreciation for the purchase of a plane to serve the air transportation needs of his insurance business. In <u>Brown</u>, the taxpayer took delivery of a plane in December 2003 and claimed the credit for that year. Before purchasing the plane, the taxpayer insisted the plane undergo various

modifications so that it could serve his business needs. The additional modifications were completed over a month later in the following tax year. The Commissioner disallowed the credit on the grounds that the plane, while fully functional, was not available for its intended function of serving the taxpayer's air transportation needs in his insurance business until the following year. Id.

Much as in Brown, the dispute in this case is over timing. Petitioners entered into the transaction for purchase of the vehicle just before the close of the year. As previously discussed, they received a bill of sale, which contained a VIN, and a certificate of origin shortly after they remitted full payment. However, a bill of sale containing a description of the vehicle and a VIN is not sufficient to show the vehicle was ready and available for full operation for its intended use. Petitioners have not offered evidence to show the vehicle was available for their use, much less fully manufactured. In fact, the vehicle was not delivered until June 8, 2010, making it impossible for the vehicle to be available for use until that date. Even if the Court were to assume the vehicle was fully manufactured and operational while awaiting shipment to petitioners, Brown and Noell tell us that the vehicle could not be considered placed in service unless and until the vehicle was readily available to serve its assigned function for petitioners' personal use on a regular basis. The Court finds that the low-speed electric vehicle was not

available for its intended use on a regular basis until it was delivered on June 8, 2010. Consequently, petitioners did not place the vehicle in service in 2009 and are not eligible for a PEVC for that year.[5]

The Court has considered all of the arguments made by the parties and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[5]The American Recovery and Reinvestment Tax Act of 2009, Pub. L. No. 111-5, sec. 1141(a), 123 Stat. at 326, amending sec. 30D modified the plug-in electric drive motor vehicle credit. The modification created a new credit against tax for qualified motor vehicles "acquired after the date of the enactment of this Act". <u>Id.</u> sec. 1142(a)-(c), 123 Stat. at 328-331. The enactment took place on February 17, 2009. <u>Id.</u> Thus, the new credit against tax applies to qualified motor vehicles placed in service after February 17, 2009, and before January 1, 2012. <u>Id.</u> The amount of the credit is 10% of the cost of the vehicle, up to a maximum credit of $2,500. <u>Id.</u> To qualify, a vehicle must either be a low-speed vehicle propelled to a significant extent by a rechargeable battery with a capacity of at least four kilowatt hours or be a two- or three-wheeled vehicle propelled to a significant extent by a rechargeable battery with a capacity of at least 2.5 kilowatt hours. <u>Id.</u>, 123 Stat. at 329. This credit was available to petitioners for the tax year in which the qualified motor vehicle was placed in service, which was tax year 2010. The Court does not have jurisdiction of petitioners' tax year 2010.