**Henry HERDMAN, Plaintiff-Appellee,**

v.

**Erwin J. SMITH, Defendant-Appellant.**

**No. 81–3357.**

United States Court of Appeals,
Fifth Circuit.

June 20, 1983.

McCann, McCann, Schrodeder & Mirabile, John J. McCann, New Orleans, La., for defendant-appellant.

Henry Tutt Dart, New Orleans, La., for plaintiff-appellee.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

On November 12, 1978, Erwin J. Smith, defendant, accompanied his employee, Charles Weckworth and Weckworth's wife Suzanne, to a New Orleans Saints football game. After Weckworth parked on a public street near the Superdome, two teenage boys approached him and demanded $2.00, otherwise his auto would be damaged. Weckworth refused to pay this "protection" money. When the trio returned, Weckworth's tires were slashed.

After questioning people in the area, Smith concluded that Henry Herdman, owner of a nearby parking lot, was responsible for the vandalism. Without further ado, Smith proceeded to beat Herdman savagely. The Weckworths watched but did not intervene. Aware that the police had been called, Smith instructed the Weckworths to deny knowing his identity and fled the scene. When the police arrived and began questioning witnesses, Charles and Suzanne Weckworth denied knowing Smith.

Herdman suffered extensive injuries including a LaForte II fracture, which severed the mid portion of his face from the remainder of his skull; left and right trimallar fractures of the left and right infra orbital rims; and a deviated septum. Subsequent to surgery, Herdman's jaw was

wired shut for approximately two months. Further corrective surgery will be needed to straighten his nose and open his sinus passages. He suffers from tearing of the right eye, double vision and numbness of the right cheek. These injuries are permanent.

After being discharged from the hospital, Herdman began the search for his assailant. The task proved onerous and frustrating. Herdman sought the aid and assistance of the New Orleans Police Department, Orleans Parish District Attorney, the Federal Bureau of Investigation, former police officers and private counsel. The officials were unable to determine the identity of the assailant and the attorney was unable to proceed without that knowledge. Herdman struggled with his own quest, finally wandering the Superdome in the wild hope of spotting the man who had attacked him. His efforts met with no success.

On April 23, 1980, a telephone call from Suzanne Weckworth ended the search. Mrs. Weckworth met with Herdman and his attorney on April 25, 1980 and identified Erwin J. Smith as the man who had beaten Herdman on November 12, 1978. In addition to identifying Smith, Mrs. Weckworth executed an affidavit stating, *inter alia,* that her husband was employed by Smith at the time of the incident and that Smith had instructed them to deny knowing him.

Suzanne Weckworth took the affidavit to the police and, when questioned about the delay in coming forward, stated that concern over her husband's continued employment by Smith had restrained her. In the interim she and her husband had separated and the constraints were lifted.

Suit was filed on May 21, 1980. By the time of trial, the Weckworths were reconciled and, according to Smith's secretary, had moved to Denver so that Suzanne would not be available to testify. Her deposition was taken in Denver. During her deposition, at which she was represented by a member of the law firm representing Smith, Suzanne Weckworth was unwilling to answer any questions about the assault and her conduct thereafter, including the giving of the affidavit, asserting her fifth amendment privilege.

The case was tried to the jury on all issues except that of prescription, which on motion of Smith, was referred to the judge for decision. Smith objected to introduction of the affidavit of Suzanne Weckworth. The objection was sustained insofar as presentation to the jury was concerned. However, portions of the affidavit, relevant to the prescription issue, were admitted for use of the court only. The entire affidavit was made the subject of a proffer. The jury returned a verdict in favor of Herdman for $250,000. The trial judge ordered a remittitur to $165,000; Herdman acquiesced. The court ruled that prescription had been tolled and that the suit was timely filed. On appeal, Smith urges prescription and challenges the award as excessive.

### Timeliness

■ Under the Louisiana Civil Code, an *ex delicto* action must be brought within one year of the date of the injury. La.C.C. art. 3536. The accrual of this limitations period is tolled by operation of the doctrine of *contra non valentem agere nulla currit praescriptio* when the defendant actively conceals his identity and the plaintiff makes reasonable efforts to locate him. *American Cyanamid Company v. Electrical Industries, Inc.,* 630 F.2d 1123 (5th Cir.1980); *Corsey v. State Department of Corrections,* 375 So.2d 1319 (La.1979); *Nathan v. Carter,* 372 So.2d 560 (La.1979).

■ Smith claims that the only evidence of active concealment is Suzanne Weckworth's affidavit and that this evidence, constituting hearsay within hearsay, should not have been admitted. We disagree, finding the statements admissible under exceptions to the hearsay rule. Suzanne Weckworth's statement regarding Smith's instructions not to identify him was admissible as a statement by a party-opponent, Fed.R.Evid. 801(d)(2), and the portions of the affidavit relevant to the issue of concealment were admissible under Rule 803(24). Rule 803(24) sets out several crite-

ria for the admission of otherwise proscribed hearsay: (1) materiality; (2) most probative evidence available after reasonable efforts; (3) maximum accommodation of the general purposes of the Rules of Evidence and interests of justice; (4) sufficient guarantees of trustworthiness; and (5) adequate notice to opposing party of intended use of statement.

■ Smith questions whether there are sufficient circumstantial guarantees of trustworthiness in this case to permit the evidence to be admitted. The district court correctly viewed the requirement of Rule 803(24) as a balancing of need and trustworthiness. Weinstein, *Evidence* sec. 803(24)[01]. In determining reliability, the court must assess "the nature—written or oral—and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which it was made.... Also significant are the knowledge and qualifications of the declarant." *Ibid.*

In this case, evidence establishing need and reliability abounds. As to need, without Suzanne Weckworth's statement, Herdman has no direct evidence of active concealment. And evidence of the reliability is most persuasive. In resuscitating the investigation of the Herdman incident, Suzanne Weckworth risked being charged with lying to the police at the time of the beating; she alternatively risked criminal sanctions should the sworn affidavit provided the police prove false. Finally, she explained her delay in identifying Smith by suggesting that she was intimidated by the fact that her husband was Smith's employee. She gave the affidavit while separated from her husband. Defendant suggests that Suzanne Weckworth fabricated her story as a means of retaliating against him for supporting her husband in the Weckworths' separation proceeding. This assertion is entirely unsubstantiated. Defendant offers no evidence that Suzanne Weckworth was motivated by a spirit of vindictiveness so strong as to cause her to risk criminal charges and punishment. That suggestion strains credulity.

Further, the evidence was obviously material; it was critical to a determination of the prescription issue; Smith had ample notice; and the ends of justice are served by its appropriate use. We find no error in the limited admission and use by the court of the selected portions of the affidavit.

■ In further challenge to application of the doctrine of *contra non valentem,* Smith maintains that Herdman did not diligently seek out Smith's identity. This claim is ludicrous. The record reflects that Herdman stayed after the law enforcement agencies until he near earned their ire. His individual effort was a model of unyielding persistence, well beyond the reasonable effort required.

■ Finally, Smith suggests that the award, even as reduced by the trial court is excessive. We gauge this contention guided by the maximum recovery rule which prescribes that an award will only be rejected if it exceeds the maximum amount which could reasonably have been awarded. *Stapleton v. Kawasaki,* 608 F.2d 571, 574 (5th Cir.1979). After examining the evidence of Smith's injuries, and reviewing cases involving comparable injuries, *see Gasquet v. Commercial Union Insurance,* 391 So.2d 466 (La.App.1980), we conclude that the award does not violate the maximum recovery rule. In addition to the fracturing of the bones in his face and the severing of his upper jaw from the rest of his skull, Herdman, whose life expectancy presently exceeds twenty years, will be permanently afflicted with loss of sensation in his right cheek, tearing of his right eye, and misalignment of his right eye, resulting in double vision. The award is patently not excessive.

AFFIRMED.